**Paul D. KEEPER, d/b/a The Law Firm of Paul Keeper, Appellant,**

v.

**FIRST CARE, INC. and Joe Costello, Appellees.**

No. 12–89–00046–CV.

Court of Appeals of Texas, Tyler.

July 31, 1990.

Kim Brown, Leonard F. Green, and B. Beecher Threatt, Austin, for appellant.

Michael G. Carroll, Tyler, for appellees.

COLLEY, Justice.

Plaintiff/appellant Paul D. Keeper, an attorney, brought suit to recover attorney's fees for legal services rendered by him

pursuant to an oral contract between himself and appellees. Defendants/appellees, First Care, Inc. and Joe Costello, filed a counterclaim, alleging that appellant "was negligent in providing the legal services made the basis of his claim. Specifically, [appellant] was not competent in litigation matters; he was not prepared to conduct the litigation in question; he did not perform legal research to become familiar with the issues involved, and, by failing to take action in the trial court, he waived appeal rights. All of the above-listed actions were negligent...." Appellees also alleged violations of Tex.Bus. & Com.Code Ann. §§ 17.41, 17.46 and 17.50 (Deceptive Trade Practices—Consumer Protection Act) (Vernon 1987 and Vernon Supp.1990), hereinafter called DTPA.

■ Appellant urges two points of error. First, he contends that the trial court was without jurisdiction to vacate that part of its original judgment dated September 6, 1988, which awarded appellant attorney's fees; alternatively, he claims that the court erred in vacating the award of attorney's fees. We will sustain the latter point of error, reform the judgment and affirm.

The record reveals that on September 6, 1988, based on a jury verdict favorable to appellant, the trial court signed a judgment awarding appellant damages in the amount of $16,111.70 and attorney's fees for preparation and trial of the case in the amount of $13,992.00, as well as contingent fees of $5,000 in the event the case was appealed to the court of appeals, an additional $2,000 in the event that an application for writ of error was filed, and another $1,000 in the event that the writ of error was granted by the Texas Supreme Court. Appellees filed a timely motion for new trial which was overruled by operation of law. On December 21, 1988, the trial court, in response to appellees' motion for new trial, signed a second judgment reforming the judgment of September 6, 1988, by eliminating the award of attorney's fees to appellant.

To decide the novel question presented by appellant's first point of error, we must construe Tex.R.Civ.P. 329b and Tex.R.Civ.P. 4.

Rule 329b reads in pertinent part:

The following rules shall be applicable to motions for new trial and motions to modify, correct, or reform judgments (other than motions to correct the record under Rule 316) in all district and county courts:

(a) A motion for new trial, if filed, shall be filed prior to or within thirty days after the judgment or other order complained of is signed.

(b) One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within thirty days after the judgment or other order complained of is signed.

(c) In the event an original or amended motion for new trial or a motion to modify, correct or reform a judgment is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period.

(d) The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed.

(e) If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

(f) On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law; ....

....

Rule 4 reads:

In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday.

The seventy-fifth day following September 6, 1988, computed according to Rule 4, fell on November 20, 1988, which was a Sunday. On November 10, 1988, the trial court heard appellees' timely filed motion for new trial, and apparently reconsidered appellees' "previous motions to disregard answers to special issues and for judgment N.O.V. ..." On December 21, 1988, the court signed the judgment appealed from.

The clear language of Rule 4 provides that if the last day of the prescribed period of time falls on a Saturday, Sunday, or a legal holiday, it is not to be included (counted), and the prescribed period of time "runs until the **end** of the **next day** which is [not] a Saturday, Sunday [or] a legal holiday." (Emphasis ours.) Therefore, we conclude that appellees' timely filed motion for new trial was overruled by operation of law pursuant to Rule 329b on Monday, November 21, 1988. Hence, under subdivision (e) of Rule 329b, the trial court had plenary or absolute power and control over the September 6, 1988, judgment until the end of Monday, December 21, 1988. Appellant's first point of error is overruled.

■ By his second point of error, appellant claims that the trial court erred in eliminating the previous award of attorney's fees. Under this point of error he argues that the trial court erred in disregarding the jury finding of reasonable attorney's fees in the amount of $13,992.00 because his suit and appellees' counterclaims "were so interrelated that the attorney's fees incurred in one cannot be separated from the ... fees incurred in the other."

In response, the appellees note that by their counterclaim against appellant, they alleged that appellant "was not competent to handle matters involving litigation, was inadequately prepared, did inadequate legal research and failed to preserve error at trial, resulting in a waiver of [appellees'] rights on appeal. The allegations [contained in the counterclaims] regarding the DTPA involved both affirmative misrepresentations and the failure to disclose material information about Appellant's ability and experience." Appellees contend that the evidence shows that, according to appellant's own attorney, the legal services rendered for appellant in this suit and "the amount of preparation work involved increased many times over as a result of [appellees'] counterclaims."

It is clear from appellees' brief that their "no evidence" argument to support an award of attorney's fees is predicated on the proposition that appellant failed to produce evidence that "segregated" the fees incurred in the prosecution of his suit from those incurred in the defense of the counterclaims asserted against him. Hence the principal question before us is whether appellant was required to produce evidence separating the amount of legal fees incurred in the prosecution of his suit from the legal fees incurred in the defense against appellees' counterclaims.

In *Republicbank Dallas, N.A. v. Shook,* 653 S.W.2d 278 (Tex.1983), Shook sued Republicbank, claiming that loans made to him by the bank were usurious. Republicbank filed a counterclaim to recover the principal and interest due on Shook's note. The trial court rendered judgment n.o.v. for Republicbank. This court reversed the trial court's award of attorney's fees and remanded that issue for retrial. That reversal was premised in part on our erroneous conclusion that "Republic may not recover attorney's fees for defending Shook's

usury and duress claims...." *Shook v. Republic National Bank of Dallas*, 627 S.W.2d 741, 750–51 (Tex.App.—Tyler 1981, rev'd, 653 S.W.2d 278 (Tex.1983). The Supreme Court reversed our judgment and affirmed the judgment of the trial court. Justice Pope, writing for the court, declared:

> [I]n this case, the Bank was forced to defend against all of Shook's claims before it could recover the money outstanding on the notes. The Bank should recover the full contractual amount for attorney's fees.

653 S.W.2d at 282–283.

*Republicbank* makes clear that when a party, asserting a claim or counterclaim upon which attorney's fees are allowable, must "overcome" his adversary's suit or counterclaim in order to recover on his own suit or counterclaim, he is entitled to recover a reasonable attorney's fee for so doing.

The Houston Court of Appeals (1st Dist.) in *Houston Lighting & Power Company v. Russo Properties, Inc.*, 710 S.W.2d 711, 714–15 (1986, no writ), followed *Republicbank*. In that case, Houston Lighting brought suit against Russo for electric services. Russo filed a counterclaim under DTPA. The jury found in favor of Russo, and the trial court signed a judgment for Russo for damages and attorney's fees based on the verdict; however, the trial court granted Houston Lighting's motion to modify the judgment, and reduced the amount of the attorney's fees awarded Russo in the original judgment. The *Russo* court rejected Houston Lighting's argument that Russo was not entitled to attorney's fees for defending Houston Lighting's claim. In so doing, the court said:

> Recent cases have held that when the counterclaimant is forced to defend against all claims before it can recover on [its] counterclaim, it is entitled to recover attorney's fees devoted to defending against the claims.

710 S.W.2d at 714.

The *Russo* court later noted that since Houston Lighting's suit and Russo's counterclaim "arose from the single account, in order for Russo to recover ... it had to prove it was not liable for any of the period [of service] in question."

The *Russo* court upheld the trial court's reduction of the *amount* of attorney's fees for reasons not material here, and affirmed the judgment of the trial court.

In this case, although the trial court withdrew appellees' counterclaim from the jury and granted appellant's motion for directed verdict, appellant was compelled to prepare for and defend against appellees' counterclaims which alleged that appellant was not competent to try the case, giving rise to appellant's claim for attorney's fees; that he failed to adequately prepare the case for trial, and was otherwise guilty of negligence in the management of the lawsuit. Appellees also state that their counterclaim alleged that appellant's conduct in failing to disclose to them "material information about [his] ability and [trial] experience[,]" constituted a violation of DTPA. It is obvious that if any one or more of appellees' allegations were true, the *value* of the legal services rendered by appellant in the underlying suit would become a critical issue in the appellant's original action.

We therefore conclude that appellant's suit for collection of attorney's fees was so inextricably intertwined with the counterclaims asserted by appellees, that appellant had no duty to produce evidence segregating the fees incurred in the prosecution of his claim from the fees incurred in his defense against the counterclaims. Stated more concisely, appellant was entitled to reasonable attorney's fees for both. *Republicbank; Williamson v. Tucker*, 615 S.W.2d 881 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); and *Houston Lighting & Power Co. v. Russo.*

The December 21, 1988, judgment is reformed to provide that appellant recover over and against appellees, jointly and severally, the additional sums of $13,992.00 for the legal services rendered in connection with the trial of this cause, $5,000 for legal

services rendered in this appeal, and the further sums of $2,000 in the event appellees filed an application for writ of error with the Texas Supreme Court, and $1,000 in the event the application for writ of error is granted by the Supreme Court. The judgment as reformed is affirmed.

RAMEY, C.J., not participating.