Paul E. TACKETT, Appellant,

v.

MID–CONTINENT REFRIGERATOR COMPANY, Appellee.

No. 18080.

Court of Civil Appeals of Texas, Fort Worth.

March 22, 1979.

Rehearing Denied April 19, 1979.

Senterfitt, Adams, Miller & Childress, and Richard T. Miller, San Saba, for appellant.

Martin & Millican, Michael M. Martin, Lampasas, for appellee.

## OPINION

SPURLOCK, Justice.

This is an appeal from a directed verdict against a lessee for rent owed and accelerated under a lease agreement after the lessee defaulted.

Paul Tackett, the lessee, acquired a refrigerator from Mid-Continent Refrigerator Company by executing a contract which Mid-Continent claims is a lease agreement, and which Tackett claims is a purchase money security interest. After a dispute over some payments Tackett stopped making the payments required under the contract and Mid-Continent repossessed the refrigerator. Lessee Tackett appealed from the judgment.

We reverse and render.

The contract provided that if Tackett defaulted, Mid-Continent could accelerate the payments and declare the entire amount of the rent immediately due and payable. Mid-Continent accelerated the rent payments and sued Tackett for the rent in arrears plus the amount accelerated, the interest thereon until judgment, costs of

repossession of the refrigerator, and attorney's fees.

■ Mid-Continent claims this court has no jurisdiction to hear Tackett's appeal because he failed to timely file his record. The appeal was originally filed in the Court of Civil Appeals for the Third Supreme Judicial District of Texas sitting in Austin. It was transferred to this Court by order of the Supreme Court of Texas. Therefore, we must determine this question according to the record as it appears in this Court.

The record indicates Tackett filed a motion for new trial in the trial court on November 18, 1977. Both parties agree that the forty-fifth day after the motion was filed was January 2, 1978. Mid-Continent claims the motion was overruled by operation of law on January 2, 1978 under Rule 329b(3)[1] and therefore, March 3, 1978 was the last day on which Tackett's transcript could have been timely filed under Rule 386. The envelope containing his transcript and made a part thereof was post marked on March 4, 1978 and filed by the Clerk of the Third Court of Civil Appeals on March 8, 1978.

Tackett claims that although January 2, 1978 was the forty-fifth day under Rule 329b(3), it was a legal holiday in 1978. Mid-Continent responds that only the days listed in Art. 4591[2] are legal holidays for purposes of Rule 4 which governs calculation of time limits found in the rules. It cites *Smith v. Harris County-Houston Ship Chan. Nav. Dist.*, 160 Tex. 292, 329 S.W.2d 845 (1959) for this proposition. While we accept this proposition as true, the Supreme Court in *Smith* certainly did not decide that the legislature could not declare additional days as holidays.

The Texas legislature in 2 *General and Special Laws of the State of Texas,* Ch. 872 at 3145 (1977), declared January 2, 1978, a holiday for state employees. January 1 was on a Sunday in 1978. Although January 2 was not declared to be a *"legal"* holiday,

state offices were closed just as if it had been a legal holiday. In our opinion the legislature's declaration that January 2, 1978 was a holiday for state employees was intended to apply to Rule 4. Therefore, Tackett's motion for .new trial was overruled by operation of law on January 3, 1978. His sixty days to file his transcript began to run on January 4, 1978. The sixty day period expired on Saturday, March 4. Thus, under Rule 4 the last day which Tackett could have timely filed his transcript was March 6, 1978. Although the Clerk of the Third Court of Civil Appeals filed the transcript on March 8, the postmark on the envelope containing the transcript is March 4, 1978. Therefore, under Rule 5 Tackett timely filed his record. The Third Court of Civil Appeals correctly overruled Mid-Continent's motion to dismiss Tackett's appeal and we overrule this contention of Mid-Continent.

■ Mid-Continent relies solely on its contention that the transcript was not timely filed. It did not respond to Tackett's points of error with reply points, counterpoints, or cross-points of error. However, since there is the general presumption that the judgment is correct, we must consider Tackett's points of error to determine if they have merit, albeit without the benefit of argument from Mid-Continent.

Tackett contends the contract with Mid-Continent is a security interest rather than a mere lease. He claims the contract is one for a security interest as a matter of law under § 1.201(37) (Supp.1978)[3] because the shipping order he signed upon receipt of the refrigerator gave him the option to acquire title to the unit with the payment of no additional consideration. He was required to pay only the sales tax upon the expiration of the contract. § 1.201(37) provides in pertinent part as follows:

"'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obli-

---

1. All references to Rules are to Tex.R.Civ.P.

2. All references to Articles are to Tex.Rev.Civ. Stat.Ann.

3. All references to Sections are to Tex.Bus. & Comm.Code Ann.

gation. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, . . (B) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

█ This provision was construed by the Court of Civil Appeals in *Davis Brothers v. Misco Leasing, Inc.,* 508 S.W.2d 908 (Tex. Civ.App.—Amarillo 1974, no writ). In a well reasoned opinion the Court adopted two tests to determine whether a lessee has the option to acquire title to the property for no additional consideration or for a nominal consideration under § 1.201(37). We agree that the best test is a comparison of the fair market value of the property at the time the option is exercisable with the option price. Another test is whether the terms of the option leave the lessee with no sensible alternative but to exercise it. The Court concluded that evidence indicative of the fair market value of the property at the time the option was exercisable is necessary for these tests to apply.

█ We agree with the approach by the Court in *Davis Brothers, supra.* However, it is our opinion that evidence of fair market value at the time the option can be exercised is not required when the lessee can take title without paying *any* additional consideration. In *Davis Brothers, supra,* the option price was the fair market value of the leased property at the end of the lease term, not to exceed ten per cent of the original purchase price. The question facing the Court was whether the option price was nominal. Certainly evidence of fair market value of the property is necessary for such a determination. However, where, as here, no additional consideration is required for the lessee to take title, it is our opinion that evidence of fair market value is not required. The fact that Tackett had the option to take title for no additional consideration upon compliance with the terms of the lease falls squarely within

§ 1.201(37) (B). Therefore the contract between Tackett and Mid-Continent was intended as a security interest as a matter of law.

In addition we note that Mid-Continent typed "Financing Statement" across the top of the contract and filed a copy with the Secretary of State and a copy with the County Clerk. Further, it was established that the fair market value of the refrigerator equalled the total of the monthly "rental" payments. Tackett under the terms of the "lease" bore the risk of loss or damage, was required to maintain hazard insurance, bore expenses of repairs, and paid all ad valorem taxes and costs of installation. We therefore sustain his point of error on this contention.

Because the lease agreement was intended as a security interest, the provisions of § 9 apply.

█ Tackett claims the trial court erred in instructing the jury to reach a verdict against him because it allowed Mid-Continent a double recovery prohibited by the provisions of § 9. We agree. Mid-Continent repossessed the refrigerator. Then it accelerated the rent under the contract and obtained a judgment against Tackett without crediting him with the proceeds obtained from the disposition of the property or its value.

It is well settled that an injured party has the duty to mitigate his damages. At common law the party claiming failure to mitigate had the burden of proof on this issue. §§ 9.501–07 governs the remedies for enforcement of security interests after default. Under these provisions a secured party who repossesses property has the duty to make a commercially reasonable disposition thereof, and account for the proceeds of such disposition or the fair market value of the property on the date the property was converted, and credit the debtor with the proceeds or fair market value. *Kolbo v. Blair,* 379 S.W.2d 125 (Tex.Civ. App.—Corpus Christi 1964, writ ref'd n. r. e.). Therefore, it is our opinion that the secured party must prove that any alleged

deficiency arose after the debtor was credited with the proceeds from a commercially reasonable disposition of the repossessed collateral or fair market value at the time the property was converted to the secured party's use.

Mid-Continent repossessed the refrigerator. There is evidence that it is Mid-Continent's usual practice to repair the repossessed refrigerators and sell them. There is no evidence in the record of what disposition, if any, was made of the refrigerator in question. The only representative of Mid-Continent who testified stated he did not know what happened to the refrigerator. There is no evidence in the record of the fair market value of the refrigerator at the time of or after its repossession. Thus Mid-Continent has failed to prove a commercially reasonable disposition of the refrigerator or fair market value at the time of conversion.

Where there is no proof of a commercially reasonable disposition of the collateral and crediting the debtor with the proceeds, a presumption arises that the proceeds equal the deficiency. *O'Neil v. Mack Trucks, Inc.,* 533 S.W.2d 832 (Tex.Civ.App. —El Paso 1974), rev'd on other grounds at 551 S.W.2d 32 (Tex.1977). In our opinion this also applies where there is no proof of credit for the fair market value at the time of conversion. Therefore, we must presume Mid-Continent received proceeds from the disposition of the refrigerator or value thereof equal to the amount of debt owed by Tackett.

Because of this presumption the trial court erred in instructing a verdict against Tackett. The relief Tackett seeks on appeal is the reversal of the judgment against him and a rendition of judgment that Mid-Continent take nothing. It is our opinion he is entitled to this relief.

We reverse the judgment of the trial court and render judgment that Mid-Continent take nothing against Tackett.