SUPERIOR PACKING, INC. and
Joe R. Herrin, Appellants,

v.

WORLDWIDE LEASING & FINANCING,
INC., Appellee.

No. A14–93–00334–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 21, 1994.
Rehearing Denied May 19, 1994.

Herbert N. Lackshin, Houston, for appellants.

William A. Peterson, Jr., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

MURPHY, Justice.

Superior Packing, Inc. ("Superior") and Joe Herrin (collectively "appellants") appeal a jury verdict awarding Worldwide Leasing & Financing, Inc. ("Worldwide") past due payments under an agreement characterized

as a lease of computer equipment. Appellants argue that appellee may not recover damages because it failed to comply with various UCC requirements. Because appellants did not designate their points of error when they requested a partial statement of facts under Texas Rule of Appellate Procedure 53(d), we presume that the omitted portions of the record support the judgment of the trial court and affirm.

In September, 1986, Superior and Worldwide entered into an agreement whereby Superior was to lease a quantity of computer equipment for a term of thirty-six (36) months, for a monthly "rental payment" of $640.42. Joe Herrin, the president of Superior, also personally guaranteed the lease payments. In March, 1989, Superior contacted Worldwide and asked to terminate the lease and return the equipment. Worldwide refused. Although Superior kept the equipment until September, 1989 (the end of the lease term), it failed to make any lease payments for the period from March to September, 1989. After Superior eventually returned the equipment, Worldwide sold it to another customer.

Worldwide filed suit for the balance due under the lease, totalling $5,278.41. Appellants answered and filed both a counterclaim and third party claim against another company and an individual, who are not parties to this appeal. Appellants then filed a Motion for Summary Judgment, which the trial court denied. The case went to trial, and the jury awarded Worldwide $5000 "as a result of the contracts and subsequent transactions in question." The trial court entered a final judgment awarding Worldwide $5000 plus $10,000 in attorney fees. Appellants then moved for a Judgment Notwithstanding the Verdict, which the trial court denied. Their subsequent Motion for New Trial was overruled by operation of law.

Appellants bring four points of error, claiming that the trial court erred in 1) entering judgment against appellants; 2) refusing to grant appellants' Motion for Summary Judgment; 3) refusing to grant appellants' Motion for Judgment Notwithstanding the Verdict; and 4) failing to grant appellants' Motion for New Trial. Appellants' first point of error states: "The trial court erred in entering judgment against appellants for $5000.00 plus $10,000.00 attorney's fees." Appellants assert no specific arguments in connection with this point, but merely restate the point along with each of the other three points of error. We are unable to determine the nature of appellants' complaint from this multifarious point of error. See and cf. TEX.R.APP.P. 74(d) (stating "A point is sufficient if it directs the attention of the appellate court to the error about which the complaint is made"). A point of error may not complain about the verdict generally. Liberty Mut. Fire Ins. Co. v. McDonough, 734 S.W.2d 66, 70 (Tex.App.— El Paso 1987, no writ). Appellants' complaint is too general and indefinite to merit any consideration. Point of error number one is overruled.

In points of error two through four, appellants argue that the trial court erred in failing to grant their Motion for Summary Judgment. Generally, orders denying summary judgment are not appealable, because they are interlocutory. Schlipf v. Exxon Corp., 644 S.W.2d 453, 454 (Tex.1982); Caramanian v. Houston Indep. School Dist., 829 S.W.2d 814, 816 (Tex.App.—Houston [14th Dist.] 1992, no writ). Thus, the portions of appellants' points of error which argue that it was error for the trial court not to grant summary judgment are overruled.

Appellants base the remaining contentions in points of error two through four on appellee's alleged failure to comply with Sections 9.504 and 9.505 of the Texas Business and Commerce Code.[1] TEX.BUS. & COM.CODE ANN. §§ 9.504, 9.505 (Vernon 1991).[2] In con-

---

1. Hereafter "the Uniform Commercial Code" or "the UCC."

2. Under Section 9.504, a secured creditor must notify the debtor prior to disposing of the collateral through a sale. TEX.BUS. & COM.CODE ANN. § 9.504(c); Tanenbaum v. Economics Lab., Inc.,

628 S.W.2d 769, 771 (Tex.1982). The method, manner, time, place and terms of the disposition of the collateral must be commercially reasonable, and the creditor has the burden to plead that the disposition was commercially reasonable. TEX.BUS. & COM.CODE ANN. § 9.504(c); Greathouse v. Charter Nat'l Bank–Southwest, 851

nection with these points, appellee brings a cross point, contending that because appellants have filed only a partial statement of facts, this Court cannot determine whether appellants' points of error have any merit. We agree. Therefore, we will address the cross point first.

Initially, we note that appellee confuses the limitation of the *scope* of an appeal pursuant to Texas Rule of Appellate Procedure 40(a)(4), with the limitation of the *record* on appeal pursuant to Rule 53(d). *See Nuby v. Allied Bankers Life Ins. Co.,* 797 S.W.2d 396, 398 (Tex.App.—Austin 1990, no writ) (stating that party limiting record under Rule 53(d) was not limiting appeal pursuant to Rule 40). Rule 40(a)(4) requires that the portion of the judgment to which appellant wishes to limit his appeal be definitely severable, and that notice of a limitation of appeal be served on all parties. TEX. R.APP.P. 40(a)(4); *Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 639 (Tex.1989). The purpose and effect of limiting an appeal under Rule 40(a)(4) is to preclude an appellee from bringing cross points, thus forcing him to perfect a separate appeal. *Warren v. Triland Inv. Group,* 779 S.W.2d 808, 809 (Tex.1989) (quoting *Donwerth,* 775 S.W.2d at 639).

On the other hand, Rule 53(d) requires a party requesting a partial statement of facts to include in the request to the court reporter a statement of the points on which he will rely. TEX.R.APP.P. 53(d). The purpose of Rule 53(d) is to reduce the size of the statement of facts and minimize the expense and delay associated with the appellate process. *Steger & Bizzell, Inc. v. Vandewater Constr., Inc.,* 811 S.W.2d 687, 690 (Tex. App.—Austin 1991, writ denied). Compliance with the rule also affords the opposing party an opportunity to designate additional material to be included in the statement of facts which it deems relevant to the issues on appeal, as defined by the appellant. Rule

53(d); *Prather v. McNally,* 757 S.W.2d 124, 126 (Tex.App.—Dallas 1988, no writ).

Over the years, limiting the record on appeal has become "hypertechnical, risky, and a close encounter with malpractice." MICHOL O'CONNOR, O'CONNOR'S TEXAS RULES CIVIL APPEALS 209 (1993). This is because of the disastrous consequences which result if an appellant does not meticulously follow the procedures explicit and implicit within the rule. Procedurally, when a party requests a partial statement of facts under Rule 53(d), he should (1) make the request of the court reporter; (2) include the points of error he intends to assert on appeal; (3) ask that the notice of limitation be included in the appellate transcript; and (4) notify the other parties of the limitation of the record. O'CONNOR at 210–211. *See also Nuby,* 797 S.W.2d 396; *Dresser Indus., Inc. v. Forscan Corp.,* 641 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1982, no writ) (discussing Rule 377(d) of the Texas Rules of Civil Procedure, the precursor to Rule 53(d)). If an appellant fails to comply with Rule 53(d) but files a partial statement of facts, it is presumed that the omitted portions of the record are relevant to the disposition of the appeal. *Christiansen v. Prezelski,* 782 S.W.2d 842, 843 (Tex.1990). Thus, when a reviewing court must consider the entire record in a case in order to determine whether an improper ruling or rendition of judgment harmed appellant, the court is unable to ascertain whether a particular ruling is harmful in light of the entire record. *Id.* If appellant complains of legal or factual insufficiency of the evidence, and fails to file a complete statement of facts, it is presumed that the omitted evidence supports the trial court's judgment. *Schafer v. Conner,* 813 S.W.2d 154, 155 (Tex.1991); *Englander Co. v. Kennedy,* 428 S.W.2d 806 (Tex.1968).

Appellants apparently have not attempted to limit the appeal under Rule 40(a)(4), but instead have filed a partial statement of facts. Appellants admit that when they re-

---

S.W.2d 173, 176–77 (Tex.1992). Appellants allege that appellee failed to plead that his sale of the computer equipment was commercially reasonable.

Under Section 9.505, a creditor may retain the collateral in complete satisfaction of the indebtedness, after notifying the debtor of his intent. TEX.BUS. & COM.CODE ANN. § 9.505(b); *Tanenbaum,* 628 S.W.2d at 771.

quested a partial statement of facts they did not designate the points of error on which they would rely, did not file the request with the clerk of the trial court, and did not notify appellee that they were limiting the record. The consequence of appellants' failure to comply with Rule 53(d) is that we presume the omitted evidence is relevant to appellants' points of error, and if the entire record is necessary for disposition of their points of error, those points must fail.

■ In points of error two through four, appellants assert that the trial court erred in failing to grant their Motion for Judgment Notwithstanding the Verdict. In order to uphold the granting of a judgment notwithstanding the verdict, an appellate court must determine that *no evidence* supports the jury's findings. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990) (emphasis added). Thus, appellants have brought a claim of legal insufficiency, but only a partial statement of facts. We must therefore presume that the omitted portion of the statement of facts supports the jury's verdict and the trial court's judgment. *Schafer,* 813 S.W.2d at 155; *Englander,* 428 S.W.2d at 807. The portions of appellants' points of error pertaining to the failure to grant judgment notwithstanding the verdict are overruled. In addition, because we have now addressed both portions of point of error number three, that point is overruled in its entirety.

■ Appellants also assert in points of error two and four that the trial court erred in not granting their Motion for New Trial. Whether a motion for a new trial will be granted is addressed to the sound discretion of the trial court and the court's ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. *Vickery v. Texas Carpet Co., Inc.,* 792 S.W.2d 759, 761 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Every reasonable presumption will be made on appellate review in favor of a trial court's order refusing a new trial. *Jackson v. Van Winkle,* 660 S.W.2d 807, 810 (Tex.1983). For the following reasons, we are unable to determine with a partial record whether the trial court abused its discretion. Therefore, we uphold the trial court's decision not to grant appellants a new trial.

■ Appellants claim that appellee failed to follow procedures mandated under the Uniform Commercial Code. However, appellants have skipped a very important step in reasoning when they argue that the trial court erred in failing to recognize appellee's burden under the UCC: If the leasing agreement into which the parties entered was not intended to be a security interest, the UCC mandates do not apply to the transaction. *Cf. Tackett v. Mid–Continent Refrigerator Co.,* 579 S.W.2d 545, 548 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.) (finding that because lease was intended as security, the provisions of article 9 of the UCC applied to the transaction). Generally, the test for creation of a security interest is whether the transaction was intended to have the effect as security, because parties must have intended that their transaction fall within the scope of article 9 of the UCC. *John Bezdek Ins. Assoc., Inc. v. American Indem. Co.,* 834 S.W.2d 401, 403 (Tex.App.—San Antonio 1992, no writ). Whether a transaction creates a lease or a security interest is determined by the facts of each case. Tex.Bus. & Com.Code Ann. § 1.201(37);[3] *Pierson v. GFH Fin. Serv. Corp.,* 829 S.W.2d 311, 315 (Tex.App.—Austin 1992, no writ).

■ Under Section 1.201(37) of the UCC, if a lease provides on its face that upon compliance with its terms, the lessee becomes the owner of the property for no additional consideration, then the lease is deemed as a matter of law to be intended for security. Section 1.201(37); *Federal Sign and Signal Corp. v. Berry,* 601 S.W.2d 137, 138 (Tex.Civ.App.—Austin 1980, no writ); *Davis Bros. v. Misco Leasing, Inc.,* 508 S.W.2d 908, 912 (Tex.Civ.App.—Amarillo 1974, no writ). If the lessee may become the owner for a consideration, the next inquiry is whether the consideration is "nominal."

---

3. Acts 1983, 68th Leg., p. 2575, ch. 442, § 12; *amended by* Acts 1989, 71st Leg., ch. 846, § 1 (Current version at Vernon Supp. 1994). The lease was signed by the parties in 1986. Therefore, the version of the UCC in place at that time applies to the transaction. Acts 1989, 71st Leg., ch. 846, § 2.

*Davis Bros.*, 508 S.W.2d at 912. If the consideration is nominal, the lease is deemed to be intended for security. Section 1.201(37); *Horton v. Dental Capital Leasing Corp.*, 649 S.W.2d 655, 657 (Tex.App.—Texarkana 1983, no writ). However, if the consideration is non-nominal, the determination of whether the lease was intended for security is a fact question; the jury must determine the intent of the parties. *Horton*, 649 S.W.2d at 657, 658 (Bleil, J., concurring); *Federal Sign*, 601 S.W.2d at 140; *Davis Bros.*, 508 S.W.2d at 912.

The lease entered into by Worldwide and Superior contains the phrase "$1 Buyout Option." However, this phrase is not explained within the terms of the lease itself. Thus, we are presented with an evidentiary question: Did this phrase mean that Superior had the opportunity to become the owner of the computer equipment for a nominal consideration? An examination of the limited record before us, including the jury's verdict, reveals that the jury believed that the transaction between the parties was a lease, rather than a security interest subject to the regulations contained in the UCC. *See Davis Bros.*, 508 S.W.2d at 910 (finding trial court implied through its judgment, findings of fact, and conclusions of law that the transaction was a lease). Like the *Davis* court, we conclude that the real issue in this case is *whether enough evidence was presented to support the jury's implied finding* that the agreement entered into by the parties was a lease and not a UCC security interest. *Davis*, 508 S.W.2d at 911 (emphasis added). Because appellants have filed only a partial statement of facts, and their points of error essentially complain of insufficient evidence, we presume that the omitted evidence supports the jury's verdict and the trial court's judgment. *Schafer*, 813 S.W.2d at 155. Appellants' points of error two and four are overruled.

The judgment of the trial court is affirmed.