**LEGENDS GYM, Jeffrey Rosin, and Vinetta Rosin, Plaintiffs,**

v.

**ABCO LEASING, INC.; Bank of America; and Horizon Bank, Defendants.**

**No. A–03–CA–518SS.**

United States District Court, W.D. Texas, Austin Division.

March 19, 2004.

---

Ted Robert Cackowski, San Antonio, TX, for Plaintiffs.

Michael L. Dinnin, Bracewell & Patterson, L.L.P., Dallas, TX, Andrew M. Taylor, Bracewell & Patterson, L.L.P., Austin, TX, for Defendants.

## ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 9th day of March 2004 the Court reviewed the file in the above-styled cause for a hearing on all pending matters and status conference. Before the Court were the Defendant ABCO Leasing, Inc.'s [1] Motion for Summary Judgment [# 12], Plaintiffs' Motion to Amend Complaint [# 14], Plaintiffs' Motion for Leave to Amend Supporting Affidavit of Ted Cackowski [# 25], and Plaintiffs' Motion to Compel Production of the SFAS 13 Lease Interest Rate Computations [# 30]. At the hearing, the Court heard oral argument on ABCO's Motion for Summary Judgment and granted the motion, rendering the motions to amend the complaint and to compel moot. Subsequently, Plaintiffs filed a "Motion to Reconsider the Court's Decision to Grant ABCO Leasing's Motion for Summary Judgment" [# 32]. Having considered the motion for summary judgment, the response, objections and reply thereto, the motion to reconsider, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders confirming its oral announcements granting ABCO's summary judgment motion.

---

1. Although two other defendants were named in this lawsuit—Bank of America and Horizon Bank—it does not appear either was served and neither has answered.

## Background

This is a dispute over a contract for the lease of gym equipment ("the Equipment Lease"). It is undisputed that plaintiff Legends Gym, Inc. entered into the Equipment Lease with the defendant, ABCO Leasing, Inc. ("ABCO"). *See* Mot. for Summ. J. Ex. 1A ("Equipment Lease"), Neither is it disputed that the other plaintiffs, Jeffery and Vinnetta Rosin (collectively with Legends Gym, Inc., "Plaintiffs") signed as guarantors for Legends Gym to the lease on December 28, 2001. *See* Mot. for Summ. J. Ex. 1B ("Continuing Guaranty"). On the same day, Jeffrey Rosin signed an additional agreement granting Legends Gym, Inc. the option to purchase the gym equipment at the end of the lease term for the fair market value of the leased gym equipment. *See* Reply Ex. A1 ("Purchase Option"). Under the Equipment Lease, Plaintiffs promised to make 36 monthly payments of $4517.41 (plus sales tax) to ABCO in return for the right to use the gym equipment. The parties later amended the Equipment Lease and reduced the monthly payments to $4404.08 (plus sales tax).

After intermittently missing or making untimely payments, Plaintiffs eventually ceased making their monthly payments to ABCO altogether on February 14, 2003 and have not submitted to ABCO a monthly payment since that time. *See* Mot. for Summ. J. Ex. 1 ("Shipley Aff.") ¶¶ 6–7 and Ex. 2A (Request for Admissions) at No. 18.; Resp. Ex. A to Enriquez Report. ABCO sent Plaintiffs letters notifying them they are in default under their contracts and warning they would accelerate the payments under the terms of the Equipment Lease. *See* Shipley Aff. ¶ 6.

Plaintiffs filed this lawsuit against ABCO in state court seeking a declaratory judgment that the Equipment Lease and Continuing Guaranty are void, unconscionable and unenforceable and a declaration that the "Equipment Lease" is in fact a usurious loan. They further requested the state court declare ABCO's security interest in the equipment invalid and declare ABCO unable to exercise its option to repossess and sell the equipment. On July 24, 2003, ABCO removed this lawsuit to this Court on the basis of diversity jurisdiction and then filed a counterclaim against Plaintiffs for breaching the Equipment Lease and Continuing Guaranty seeking damages and attorneys' fees. Subsequently, pursuant to paragraph 21 of the Equipment Lease, ABCO repossessed the gym equipment and sold it for $45,000. *See* Shipley Aff. ¶ 7.

## Analysis

### A. Summary Judgment Standard

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding summary judgment, the Court should "construe all facts and inferences in the light most favorable to the nonmoving party." *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir.1997), *cert. denied*, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir.1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Both parties bear burdens of producing evidence in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). First, "[t]he moving party must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof." *Hart*, 127 F.3d at 435 (citing *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548). The nonmoving party must then "set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings." *Id.* (citing FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996).

## B. Equipment Lease or Secured Loan

■ ABCO has moved for summary judgment on the grounds Plaintiffs breached their obligations under the Equipment Lease and the Continuing Guaranty. Plaintiffs do not dispute that they ceased making monthly payments in violation of their obligation under the Equipment Lease, Instead, they argue the Equipment Lease is not actually a valid equipment lease but instead "a [sic] unconscionable cloak to avoid usury" and therefore, they argue they are not liable to ABCO for breach of contract. Resp. at 2. Texas usury law does not apply to commercial leases and therefore the question this Court must answer is whether the contract between ABCO and Plaintiffs is in fact a lease, in which case, Plaintiffs' usury claim/defense would fail. *See Brokers LeasingCorp. v. Standard Pipeline Coating Co.*, 602 S.W.2d 278, 280 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.) (addressing this situation, namely whether the "contract which purports to be a lease is actually a conditional sale subject to the usury laws.").

■ If a purported lease "provides on its face that upon compliance with its terms, the lessee becomes the owner of the property for no additional consideration, then the lease is deemed as a matter of law to be intended for a security." *Superior Packing, Inc. v. Worldwide Leasing & Financing, Inc.*, 880 S.W.2d 67, 71(Tex.App.—Houston 1994, writ denied); *see also* TEX. BUS. & COM. CODE § 1.203(b)(4) (codifying UCC § 1.201(37)). But many purported leases that are in fact disguised purchase agreements do not blatantly deem the leased property the lessee's at the end of the lease term. Therefore, Texas courts have emphasized "the importance of the lessee's option to purchase leased property at the end of the [contract's] term" in ascertaining whether a purported lease is in fact a disguised purchase agreement. *Brokers Leasing*, 602 S.W.2d at 280. A contract that does not contain a purchase option will be considered a lease as a matter of law, not a purchase agreement. *Transamerican Leasing Co. v. Three Bears, Inc.*, 586 S.W.2d 472, 478 (Tex.1979). The converse, however, is not necessarily true. In *Brokers Leasing*, the court held that although the contract at issue contained a purchase option, it did not constitute a purchase agreement because the lessee was not obligated to purchase the property, the rental payments were not applied to the purchase price, and the option price was for more than a nominal amount (the fair market value). *See Brokers Leasing*, 602 S.W.2d at 281. Likewise, in this case, although Plaintiffs had the option to purchase the equipment they leased from ABCO, they were under no obligation to do so, their rental payments were not applied to the purchase price, and the option contract set an option price of the fair market value of the equipment. *See* Purchase Option. Accordingly, under *Brokers Leasing*, the transaction between ABCO and Plaintiffs

(the Equipment Lease) constitutes a lease and therefore Plaintiffs' usury claim/defense fails as matter of law.

In their motion to reconsider,[2] Plaintiffs rely on a Fifth Circuit opinion that has been withdrawn: *Woods–Tucker Leasing Corp. of Georgia v. Hutcheson–Ingram Development Co.*, 626 F.2d 401, 411 (5th Cir.1980), *withdrawn by* 642 F.2d 744 (5th Cir.1981).[3] Plaintiffs contend this Court erred in concluding the Equipment Lease constitutes a lease and not a secured transaction as a matter of law because the Court is required to let a jury decide this question based on the "economic realities" of the situation. In spite of their reliance on withdrawn precedent, Plaintiffs general argument that the nature of a transaction (lease or secured loan) must be determined in light of the facts of the case is in fact true. *See, e.g., Superior Packing*, 880 S.W.2d at 72 (iterating the general rule that in transactions where the lessee has the option to purchase the leased property at the lease term for non-nominal consideration, the determination of whether the lease was intended for a security is a fact, *i.e.*, a jury, issue). But this case deals with an undisputed factual situation addressed squarely by the precedent and has been held to involve a lease and not a secured loan. *See Brokers Leasing*, 602 S.W.2d at 281; *see also Fichtner v. Nynex, Credit Co.* 1996 WL 45982, *4 (Tex.App.—Dallas 1996, writ denied) (citing *Brokers Leasing* for the proposition that "[e]ven if the contract contains a purchase option, the contract will not be considered a purchase agreement if the lessee is not obligated to purchase the property, the rental payments are not applied to the purchase price, and the option price is for more than a nominal amount."). The case at hand, like *Brokers Leasing*, involves a situation where the lesses is not obligated to purchase the equipment, the rental payments were not applied to the purchase price, and the option price is fair market value (which by definition, is not nominal). As such, the Equipment Lease is in fact a lease and not a purchase agreement as a matter of law.

### C. Breach of the Equipment Lease

■ Under Texas law, to prove Plaintiffs breached their obligations under the Equipment Lease, ABCO must demonstrate: (1) the Equipment Lease is a valid

2. The Court is appalled Plaintiffs would submit a motion so riddled with typographical, spacing, and quotation errors that it is almost indecipherable. The Court is even more appalled that counsel for Plaintiffs would rely on a case withdrawn as authority by the Fifth Circuit (albeit on different grounds) without noting or addressing the significance of that case's subsequent history.

3. However, the Court notes in the first *Woods–Tucker* opinion, contrary to this Court's statements at the summary judgment hearing, the Fifth Circuit stated:

The transaction between [the plaintiff and the defendant] could be a true lease for federal tax purposes and a loan for state usury law purposes. Each of these substantive areas of law will define and distinguish between loans and leases based their underlying purposes and policies. Tax law and usury law purposes and policies differ. Therefore, they define loans and leases differently. The treatment of a transaction for federal tax purposes has little relevance to whether that transaction is a loan or a lease within the meaning of state usury law.

*Woods–Tucker*, 626 F.2d at 414. Because this opinion was withdrawn and the subsequent opinion held Mississippi and not Texas law governed the case, the Fifth Circuit did not address which aspects of its first opinion remained good law. This Court notes that it would consider as part of the "economic reality" of the transaction between ABCO and Plaintiffs that Plaintiffs were able to secure all of the tax benefits of treating their transaction with ABCO as a lease, that is they could deduct 100% of their lease payments whereas they would have to take depreciation-adjusted deductions if they had purchased the equipment.

lease; (2) ABCO performed or tendered performance of its duties; (3) Plaintiffs breached the lease; and (4) ABCO suffered damages as a result of the lease. *See, e.g., Wright v. Christian & Smith,* 950 S.W.2d 411, 412 (Tex.App.—Houston [1st Dist.]1997, no writ). Upon ABCO's motion for summary judgment, it is Plaintiffs' burden to produce evidence or identify discrepancies in the evidentiary record that demonstrate there exists an issue of fact regarding at least one element of ABCO's breach of contract counterclaim as "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace,* 80 F.3d at 1047. The Court held above the Equipment Lease constitutes a valid lease and Plaintiffs have not disputed that ABCO delivered the gym equipment to Plaintiffs nor that they have ceased making the payments they agreed to pay under the Equipment Lease and guaranteed under the Continuing Guaranty. In fact, in their responses to ABCO's requests for admissions, Plaintiffs admit they ceased making monthly payments in March 2003. *See* Mot. for Summ. J. Ex. 2A (Request for Admissions) at No. 18.

Neither do Plaintiffs properly controvert ABCO's calculation of damages. ABCO submitted affidavit evidence that after mitigating its damages by selling the leased equipment for $45,000, Plaintiffs still owe Defendants $161,180.44, which includes the unpaid amounts due under the Equipment Lease and Continuing Guaranty ($82,-039.31) and the attorneys' fees ABCO contends it has incurred due the Plaintiffs' breach ($79,141.13). *See* Mot. for Summ. J. Ex. 1 ("Shipley Aff.") ¶¶ 6–7; Ex. 2 ("Taylor Aff.") ¶¶ 4–5. In the exhibits Plaintiffs have submitted with their expert report, Plaintiffs themselves indicate they made their last payment on February 13, 2003. *See* Resp. Ex. A to Enriquez Report. Although Plaintiffs contest the validity of the Equipment Lease, they have not submitted an alternative calculation of the amounts they paid and owe under their contracts with ABCO in the event the Court upheld the Equipment Lease as valid, and therefore the Court accepts ABCO's calculation of $82,039.31 in damages.

## D. Attorneys' Fees

■ Under the Continuing Guaranty, the Rosins as guarantors of the Equipment Lease agreed to pay "reasonable attorneys fees and other expenses which [ABCO] incurs in enforcing this Continuing Guaranty." *See* Continuing Guaranty ¶ 10. ABCO contends it has incurred and will incur $79,141.13 in attorneys' in addition to the $82,039.31 in damages it suffered as a consequence of Plaintiffs' breach. *See* Mot. for Summ. J. Ex. 2 ("Taylor Aff."). However, the affidavit evidence submitted in support of ABCO's attorneys' fees is insufficient for the Court to evaluate whether the requested fees are reasonable. For one thing, the fees are not itemized and apparently the total includes fees associated with preparing trial exhibits and experts even though it is not clear whether ABCO incurred those costs since the Court orally granted its motion for summary judgment weeks before docket call. *See id.* ¶ 4. Additionally, ABCO's attorneys have not indicated the amount of time each attorney spent on the various tasks nor the hourly rate each attorney charged. As such, the Court will grant ABCO's motion for summary judgment and award $82,039.31 in damages but declines to award ABCO their requested attorneys' fees unless ABCO submits a motion for attorneys' fees that includes proper documentation within eleven days of the date this Order is entered. The Court will consider ABCO's failure to submit the motion with eleven days a waiver of any request for fees.

In accordance with the foregoing:

IT IS ORDERED that Defendant's Motion for Summary Judgment [# 12] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Reconsider the Court's Decision to Grant ABCO Leasing's Motion for Summary Judgment [# 32] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to Amend Supporting Affidavit of Ted Cackowski [# 25] is DISMISSED AS MOOT in light of the parties' representation at the hearing that this should not have been docketed as a motion.

IT IS FINALLY ORDERED that Plaintiffs' Motion to Amend Complaint [# 14] and Plaintiffs' Motion to Compel Production of the SFAS 13 Lease Interest Rate Computations [# 30] are DISMISSED AS MOOT.